And we'll move to our third case this morning, Ivan Cadavedo v. Lynch. Good morning, Your Honor. May it please the Court, Timothy Gamacorda on behalf of the petitioner. The premise or posture of this case is fairly simple. It has to do with a request for a continuance at a master calendar hearing before an immigration judge. The premise of the request for a continuance was to allow the petitioner an opportunity to proceed a collateral fight, if you will, with U.S.CIS because of a 204C marriage fraud. The case law is clear that collateral matters, the immigration judge does not have to continue the case. And that is because this petitioner here in the past was represented by counsel at the U.S.CIS level and his attorney never appealed that 204C finding. That attorney has been disbarred because of marriage fraud conspiracy charges. That, forgive me for interrupting, but was his former counsel's conviction for conspiracy to commit marriage fraud related to Cadavedo's marriage? Yes. That's right. And even though the petitioner has averred that he never paid $7,000 for any kind of marriage, even the immigration judge said, well, it's very hard to go after previous counsel because he has been disbarred. So a Lozado motion most likely would not work. I don't understand that point. Why wouldn't a Lozado motion, Lozado procedural requirements be appropriate to at least hear what counsel has to say? I was told that, well, you have to make a bar complaint. Yeah. And he has to respond. And I was assuming because he's already been non-disbarred. If I could get back to the focus, which is this continuance that was denied. Right. You sought that on the day of the hearing for the first time, correct? As omnily retained counsel, yes. Well, you first filed one back on October 1st, correct? Correct. And, in effect, it was granted by reason of the government shutdown, right? Correct. In the fall of 2013. Right. So why didn't that give you enough time to get ready? In terms of, well, I mean, the reason that I filed that continuance is because I was under the impression that we were going to have a contested hearing on the fraud charge. And I wanted to ask the court if I could subpoena witnesses and I never received an answer. Right. The hearing is scheduled and you show up saying I need a continuance on the day of the hearing. Most trial judges who have busy calendars and are ready to hear your case are going to be skeptical about a day of the hearing motion saying I'm not ready yet. Right. Well, the request for the hearing, the request for the continuance, I mean, the government eventually dismissed the marriage fraud, right? So that's off the table. I wanted an opportunity to see if the court could help. You want to try a collateral challenge, right? Well, if they would close the case for a period of time whereby I can go back to USCIS. Now, let me ask you about that, okay? Because you told us in your brief that the chances of USCIS agreeing to entertain the kind of appeal that you say you want to pursue is nil. That's my – Well, I mean, I said it's nil, correct, but at least – You're probably right, but I – Well, I mean, here's the thing. I would have tried to build it up and submit all the affidavits under the sun. I mean, even today, we have an approved I-130. And so, unfortunately, the client got his I-130 approved and he didn't tell me, and that's why I couldn't advise the court or the board about that. But I just wanted to point that out. But the reason why that I wanted to ask for the continuance is the reason for the continuance. I understand the courts are going to say it's speculation, right? It's speculation, right? But if you consider the fact that he had deficient counsel at the USCIS level, I at least wanted to have an opportunity to fight that with USCIS. There was no inconvenience to the court to close the case. I mean, the courts close cases all the time. And I just wanted that opportunity. So why didn't you pursue that during the time where you had the de facto continuance as a result of the government shutdown? In terms of what? With USCIS? Yeah, yes. Yeah. You got this gift as a result of the budget staying in Washington. Correct. Even had I submitted a request to USCIS, the IJ most likely would have entered that departure order because they're two different agencies. It's a collateral attack. But I understand your point. That's it. All right. Thank you. Ms. Workman. Mr. Gambacorda, you're over here. You're over here. May it please the court. Claire Workman for the Attorney General. The court should deny this petition for review because the agency acted well within its considerable discretion in denying petitioner's request for a continuance. Petitioner has... You know, one thing I really find so troubling about this case, Ms. Workman, is that despite the fact that the government agency dropped the marriage fraud charge, it continued to rely on it. How could the government say that Cadevito would not have had any chance to adjust his status in any case because of the sham marriage when that charge had been dropped? I mean, talk about having it both ways. It is just so unjust. Well, respectfully, Your Honor, there's a difference in the burden of proof on a removability charge. Of course, it's the government's burden to prove that charge. And it declined to go forward with that charge because petitioner had already conceded the other two charges. But that doesn't mean, with respect to relief, it's, of course, the alien or the non-citizen's burden to prove eligibility and that he or she merits a favorable exercise of discretion for adjustment of status. And in this case, the petitioner would still need to show he is admissible. That's one of the requirements for adjustment of status. And that requirement is that he must show he's clearly and beyond a doubt entitled to be admitted and not inadmissible under 8 U.S.C. Section 1182, which includes Section 1182A6C1, which is the fraud misrepresentation ground of inadmissibility. So, and then, if... Look, no matter how you spin it, okay, the fact is that when you fail to show up, the government then used the fact of the marriage fraud to justify the failure to continue the case by stating that he was unlikely to prevail in any case, in any event, because of the marriage fraud. And it seems to me that the government should not have it both ways. Once the government decides to drop the sham marriage charge, it should never be allowed to rely on it again, even in a tangential way. A court should not have heard the words sham marriage again. And this is such a difficult situation because, boy, he may have had the most horrible lawyer that we've seen in a very long time, originally, on top of everything else. Well, Your Honor, there's also a difference between the marriage fraud charge and the finding under 8 U.S.C. Section 1154C that is a bar to any future visa petitions being approved when there's been a finding of marriage fraud. That's something that USCIS found in this case, originally. So that was still in play, even though DHS decided not to proceed with the marriage fraud charge of removability. So the immigration judge and then the board used the petitioner's unlikely or perhaps speculative possibility that he would be able to overcome that fraud finding with an untimely challenge before USCIS. It's only one of the many speculative events that would have to occur for a petitioner to be eligible for adjustment of status, including the fact that he didn't even have at the time he requested his continuance. He did not have a qualifying relative who could apply for a visa petition on his behalf. He alleged that he had a daughter who was in naturalization proceedings at the time, but he provided no evidence as to where she was in that process. And so, of course, he did not have an approved, let alone a pending I-130 visa petition at that time. And this court repeatedly has found no abuse of discretion where the agency has denied a continuance because there is no prima facie approvable visa petition filed on the noncitizen's behalf. And with respect to the former attorney who handled the adjustment of status application and petitioner's ex-wife's, the first I-130 visa petition that was filed with USCIS, and there is no reason why the petitioner could not have filed a lasada motion to reopen against that former attorney just because he was disbarred. Well, that would have been risky since that attorney, as I understand it, pleaded guilty to conspiracy to commit marriage fraud. Yes, Your Honor. I assume the facts underlying that conviction involved a different alien? As far as I can understand from the indictment that is in our record, and there's no mention of this petitioner as part of the conspiracy charges that that attorney was convicted under. And but it, of course, does look suspicious. And in fact, this petitioner actually worked for that attorney during that time that he was filing or actually, excuse me, before he, okay, he worked for that attorney from January of 2004 to May of 2007. He married his ex-wife in March of 2007, and she filed that I-130 in May of 2007. So the timing is suspicious. Yes, Your Honor. Ms. Workman, let me try to ask this this way. Let's go back to October of 2013, okay? The government, late October, the government shutdown has ended. It's open for business again. If Mr. Cadavedo had gone back to USCIS in late October of 2013, what procedures were available to him to try to challenge that 2009 finding of fraud? Well, Your Honor, he could have filed an untimely motion to reopen or reconsider. And based on Lozado, you'd have to follow that process, blame his lawyer. Yes, Your Honor, I believe so. There's no the regulation is very brief on the motions to reopen and reconsider on the untimely ones before USCIS, but it's certainly. That's the channel. Yes, Your Honor. The other, he actually had, by my count, about six opportunities to contest the fraud finding, and to the best of my knowledge, has never taken advantage of any of them. What are the other five? So he could have first, of course, filed a timely motion to reopen or reconsider before USCIS within 30 days of the adjustment of status denial. He could have sought APA review in district court. He could have filed the untimely motion. And that regulation, 8 CFR section 103.5 A1I, you just have to show that the delay was, and I'm quoting, delay was reasonable and was beyond his or her control. So, of course, ineffective assistance would be a conceivable basis that would fall within that. Another option, and probably the most likelihood, the one that had the best likelihood of succeeding, would have been to file a motion to remand with the board while his appeal was pending. Now, of course, that meant if petitioner did not notify his attorney that that second I-130 had been approved, but that falls on him. Because that would have, if he had filed that motion to remand, then the board might have remanded to the immigration judge to consider that approved I-130 and how that played into that judge's reasoning on the denial of the continuance. But, again, he didn't do that. His options that remain now are a joint motion to reopen with ICE, but, of course, ICE has to agree to file that. Because any motion to reopen now would be untimely. So that, a joint motion is not subject to the time requirements. Oh, I'm sorry. My time is up. May I finish? You can conclude. Thank you, Your Honor. The last option would be a motion for sua sponte reopening, which, again, has a high hurdle, but it's a possibility. And, lastly, petitioner actually has the ability to consular process with his approved I-130. He does have to go back. He would have to go back to the Philippines, and there are some other hurdles that he would have to face, but that is a possibility that remains to him. All right. Thank you. Thank you, Your Honor. Mr. Gambacora, how much time did we have left? You have two minutes left. In terms of the remedies available to petitioner, I believe his remedies are pretty much limited. Consular processing is an option, but don't forget if we have a departure order against him, that is a bar for 10 years. He would also have to have an unlawful presence waiver as well. That could be done, but the removal order for 10 years is definitely an impediment. In terms of the untimely motion to remand, I'm sorry, the motion to remand to the board, that would have been the ideal situation. Unfortunately, in September 2015, Mr. Cadavedro had come to my office, and that's when he had showed me the approved I-130 and non-naturalization. And so that's why that was not done at that time. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.